UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

RODOLFO HIRALDO PEREZ,

    Plaintiff,

    v.

JOSEPH PIAZZA, WARDEN,
LT. JOHN DOMANGAUER and
OFFICER WILLIAM WILK,

    Defendants.

: 
: 
: 
: 
: 
: 
: 
: 
: 
: 
: 
:

CIVIL ACTION NO. 3:12-CV-227

(Judge Kosik)

FILED
SCRANTON
SEP 3 0 2013
PER ⟋
DEPUTY CLERK

## MEMORANDUM

Before the court are plaintiff's objections (Doc. 61) to the Report and Recommendation of Magistrate Judge Thomas M. Blewitt filed on May 16, 2013 (Doc. 53). For the reasons which follow, we will adopt the Report and Recommendation of the Magistrate Judge.

BACKGROUND

Plaintiff, Rodolfo Hiraldo Perez, an inmate confined at SCI Greene, Waynesburg, Pennsylvania, filed the instant civil rights action pursuant to 42 U.S.C. §1983 on February 6, 2012. The plaintiff's complaint was based on incidents which occurred while plaintiff was a pretrial detainee housed at the Luzerne County Correctional Facility ("LCCF"). Named as defendants in the action were Warden Joseph Piazza, Lt. Domangauer and Correctional Officer Wilk. Plaintiff raised claims challenging his conditions of confinement and use of excessive force.[1] Defendants Domangauer and Wilk filed their Answer to the Complaint raising Affirmative

---

[1] We note that defendant Piazza was dismissed from the action, as well as plaintiff's condition of confinement claims, on April 19, 2012 (Docs. 8 and 9). The action was allowed to proceed against Defendants Domangauer and Wilk on the Eighth Amendment excessive force claim.

Defenses on July 16, 2012 (Doc. 22). Following the completion of discovery, on December 17, 2012, Defendants Domangauer and Wilk filed a Motion for Summary Judgment, along with a brief and supporting documents (Docs. 38-41). Plaintiff failed to file any opposition brief, even after he was given additional time to file from the court (Doc. 43). [2]

On May 16, 2013, the Magistrate Judge issued a Report and Recommendation (Doc. 53), wherein he recommended that the Defendants' Motion for Summary Judgment (Doc. 38) be granted and that Judgment be entered in favor of Defendants Wilk and Domangauer and against Plaintiff Perez. After reviewing the record[3], the Magistrate Judge concluded that the Defendants' undisputed evidence demonstrates that Defendants Domangauer and Wilk did not violate plaintiff's Eighth Amendment rights by using excessive force on October 26, 2011 at LCCF.

On August 26, 2013, plaintiff filed objections (Doc. 61) to the Report and Recommendation of the Magistrate Judge. In his objections, plaintiff asserts that defendants have failed to show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Plaintiff argues that the allegations in his verified complaint, which should be treated as an affidavit in opposition to the summary judgment motion, is sufficient to create a genuine issue of material fact. Plaintiff objects to Defendants' Exhibits in support of their summary judgment motion as self-serving declarations. The plaintiff also argues that just because no medical records exist as to his treatment, it does not negate plaintiff's assertions that he was seen and provided with medical treatment for his injuries sustained at the hands of

---

[2] On May 6, 2013, Plaintiff filed a Motion to Amend his complaint and a proposed Amended Complaint. Because of the untimeliness of the Amended Complaint, the posture of the case, and the prejudice to defendants, we will adopt the recommendation of the Magistrate Judge that the Motion to Amend the Complaint (Doc. 51) be denied.

[3] We note that, as indicated above, defendants have filed documentation in support of their motion for summary judgment and that plaintiff did not respond to the motion.

the defendants. Finally, plaintiff disputes the Magistrate Judge's findings as to the use of force by the defendants, the justification for the use of force and the extent of the injuries sustained by plaintiff. On September 10, 2013, defendants filed a brief in opposition to plaintiff's objections (Doc. 62).

DISCUSSION

When objections are filed to a Report and Recommendation of a Magistrate Judge, we must make a de novo determination of those portions of the Report to which objections are made. 28 U.S.C. §636(b)(1)(C); see Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In doing so, we may accept, reject or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. §636(b)(1); Local Rule 72.3. Although our review is de novo, we are permitted by statute to rely upon the Magistrate Judge's proposed recommendations to the extent we, in the exercise of sound discretion, deem proper. United States v. Raddatz, 447 U.S. 667, 676 (1980); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. National State Bank v. Federal Reserve Bank of New York, 979 F. 2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken

as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brown v. Grabowski, 922 F. 2d 1097, 1111 (3d Cir. 1990)(quoting Anderson, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concluded that "the evidence is merely colorable... or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50.

As we indicated earlier, the Magistrate Judge recommends that the Defendants' Motion for Summary Judgment should be granted based on the record before the court and the plaintiff's failure to oppose the motion. In his objections, plaintiff disputes that the defendants established that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Plaintiff also disputes defendants' evidence that he was aggressive and combative and that his injuries were de minimis.

The plaintiff asserts that his verified complaint should be considered as an affidavit in opposition to defendants' motion for summary judgment.[4] The allegations in plaintiff's verified complaint, in pertinent part, state[5]:

_____

[4] Plaintiff is correct that a verified pro se complaint may be treated as an affidavit for purposes of determining defendants' summary judgment motion, London v. Pa. Bd. Of Probation and Parole, 135 F. Supp. 2d 612, 613 n. 5 (E.D. Pa. 2001). However, we note that the verification for Plaintiff's complaint is on the second page and that the pertinent allegations follow the verification. Because Plaintiff is pro se, we will consider all of Plaintiff's information in the light most favorable to him in deciding the instant motion.

[5] While plaintiff's complaint also raises issues regarding conditions of confinement, the only claim remaining in this action is the Eighth Amendment excessive use of force claim.

> On 10-26-11 at 6:30PM Correctional Officer "Wilk" and Lutienent (sic) Domangauer basically assulted (sic) me by folding my arms and slamming my head off the elevator wall.

Attached to plaintiff's complaint is an undated document entitled "To Whom It May Concern", which included the following excerpt:

> On 10-26-11 at 6:30 pm correctional officer wilk(sic) and Lutienent (sic) Domangauer basicly (sic) assaulted me on camera by folding my arms going into the elevator and slamming my head off the wall. On 10-27-11 at 10:30 am The (sic) doctor checked me out on camera my back everything and suggested antibiotics for the pain. I was on the pills for a couple of days. I have witneses (sic) that were present when the doctor checked me.

Finally, in his deposition, the Plaintiff testified about the incident of October 26, 2011, as follows:

> Q. So let me see if I understand this. So you were being taken to the first floor?
>
> A. Yes. I was going to the hole.
>
> Q. So the procedure is you'd be cuffed?
>
> A. Yes. They put cuffs on.
>
> Q. And then there would be a guard on each side of you before you enter the elevator?
>
> A. Yes. That's if there's a process of taking you to the hole. But in the normal process, we just have to look straight ahead with one guard on each side.
>
> Q. But you were going to the hole?
>
> A. Yeah. They sent me directly to the hole.
>
> Q. Now, when the elevator doors open, where are you placed in the elevator?

A.    Well, when the doors to the elevator opened, my whole body was down looking at the floor. So when the guards put me in there with pressure, my head crashed against the metal from the elevator.

I don't know why they had to use that physical, that force, since I already have the handcuffs and my hands were behind my back.

Q.    So what part of the inside of the elevator did your head strike?

A.    Well, directly into the elevator there's a metal handrail so that one can hold on and not tumble around in the elevator, and that's where my head hit.

Q.    Does the lieutenant and the C.O., are they still holding you at that time?

A.    Yeah. Both grabbed me on either side. They both have me on either side, and my head crashes into the, boom. That's when they straightened me up and took me down to the hole.

Q.    So after they straightened you out, where do they place you for the journey to the first floor?

A.    Well, the door opened, and we were going down. So when we came out, there were more guards there, but only Wilk and the lieutenant were there. They were taking me to the hole. They put me directly in a cage like for dogs, like, a small cage. That's where Lieutenant Domangauer pushed me in.

Q.    I'm sorry. I mean when you're in the elevator when you're being transported in the elevator. So you hit your head, they straighten you up. Where do they put your body in the elevator?

A.    They had me – they were holding me. I was standing there, and they were holding me. I can't defend myself; they were controlling me.

(Doc. 41, Exhibit A, N.T. 31-32).

Plaintiff also testified that he saw medical personnel after the incident who provided him with medication. Specifically, he stated that he was given one pill a day from October 26 until October 29, 2011 (Doc. 41, Exhibit A, N.T. 35-44).

In support of the Motion for Summary Judgment, Defendants filed an Appendix of Exhibits (Doc. 41)[6]. As the Magistrate Judge's Report indicates, Defendants'

---

[6] Because plaintiff did not oppose Defendants' Motion for Summary Judgment, the Magistrate Judge accepted Defendants' Statement of Material Facts (Doc. 40) as true.

evidence reflects that on October 26, 2011, plaintiff was housed in cell 2A at LCCF, and that every inmate in plaintiff's cell block was allowed to take a shower except for plaintiff, because of his confinement status following a sanction he received for an October 14, 2011 assault incident (i.e., plaintiff was only allowed one shower every three days). Plaintiff then got upset and annoyed and, he spoke to Corporal Chudoba in a manner which he knew would result in his confinement in the hole. Specifically, Defendants' Exhibit I (Doc. 41, Exhibit I), a Misconduct Report issued against plaintiff on October 26, 2011, shows that plaintiff called Corporal Chudoba an expletive. Corporal Chudoba took plaintiff, without restraints, to the hallway outside of the cell block. Defendant Domangauer met them in the hallway as the corporal requested, and asked plaintiff why he disrespected the corporal. Plaintiff stated that Corporal Chudoba responded badly to his question why he could not take a shower. Defendant Domangauer then confirmed that plaintiff had a shower restriction against him as a sanction. He then put handcuffs on plaintiff in order to transport him down to the hole via an elevator, due to his treatment of the corporal. According to Defendants' evidence, plaintiff became aggressive and combative during transport to lockup and was restrained by the Defendants with the least amount of force possible under the circumstances (Doc. 41, Exhibit I). Furthermore, according to Defendants' evidence, plaintiff became combative with staff while he was handcuffed behind his back and did not comply with orders. Plaintiff was then put on the elevator facing the back wall to be escorted to the hole for his charged misconduct against Corporal Chudoba. Defendants' evidence indicates that plaintiff was not assaulted by defendants and, that defendants were only reacting to plaintiff's combative behavior in the elevator (Docs. 41, Exhibits I, J). Further, defendants' evidence indicates that no medical records existed at LCCF with regard to the treatment plaintiff allegedly received as a result of a head injury following the October 26, 2011 incident.

Defendants' evidence showed that plaintiff did not receive any medication by the medical staff on the date of the alleged incident or any day thereafter (Doc. 41, Exhibits K-N).

As the Magistrate Judge points out, five factors apply in determining whether a correctional officer used excessive force: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response. Brooks v. Kyler, 204 F. 3d 102, 106 (3d Cir. 2000)(citing Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Additionally, as the Supreme Court stated in Hudson v. McMillian, 503 U.S. 1, 9, 10 (1992), an inmate need not suffer a serious injury in order for the excessive use of force to violate the Eighth Amendment. However, the Court also recognized that not "every malevolent touch by a prison guard gives rise to a federal cause of action," and reaffirmed that the Eighth Amendment's prohibition of cruel and unusual punishment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"

After reviewing the record, the Magistrate Judge concluded that defendants did not use excessive force on plaintiff on October 26, 2011, in violation of the Eighth Amendment, and that defendants' actions were not malicious or done to cause plaintiff harm. The Magistrate Judge found that defendants' actions were used to get plaintiff to comply with the legitimate orders of prison staff needed to transport plaintiff to the hole because of plaintiff's misconduct. Moreover, the use of force by defendants to control plaintiff was not "repugnant to the conscience of mankind" and

was warranted based on plaintiff's combative conduct. Finally, plaintiff did not submit any evidence to show that he suffered any serious injuries as a result of the October 26, 2011 incident. Thus, the Magistrate Judge recommended that Defendants' Motion for Summary Judgment be granted as to plaintiff's excessive force claim.

In reviewing the evidence of record in the light most favorable to plaintiff, we agree with the Magistrate Judge that plaintiff has failed to establish an Eighth Amendment excessive force claim. In accepting the allegations in plaintiff's complaint as a sworn affidavit, the plaintiff asserts that on October 26, 2011, the defendants basically assaulted him by folding his arms and slamming his head off the elevator wall. No other details were provided about the incident. In his deposition, plaintiff describes the incident of October 26, 2011 in more detail[7]. He discusses how he was housed on 2A on the second floor of LCCF and that the inmates on 2A were being taken for showers. Corporal Chudoba told plaintiff that he couldn't take a shower. Plaintiff states that he got upset and annoyed and cursed at Corporal Chudoba. He knew that Corporal Chudoba was annoyed and that when an inmate speaks to an officer in that manner, he was going to be packed up and sent to the hole. Plaintiff packed up his things and had everything packed when Corporal Chudoba returned and took him into the hallway. Defendant Domangauer met them in the hall and asked Plaintiff why he disrespected the corporal. Plaintiff responded that the corporal responded to him badly, so he responded to the corporal badly. His hands were cuffed behind his back. They then walked directly to the elevator. Defendant Wilk came and stood by his side. Plaintiff stated that:

> then they lowered my body, my head facing down to the floor. And in that moment, the elevator door opened. So then I was already cuffed and they had me grabbed. Domangauer had me here on my left side, and William Wilk had me on the right.
> So when they put me in the elevator with all that force, my head was

---

[7] See Doc. 41, Exhibit A, N.T. 22- 25.

down. So they pushed me directly into the elevator, and my head
banged into the metal of the elevator. I received a – I hit my head on
the metal, or I received a blow to my head.
In my opinion, a person who has no defenses who already has their
cuffs in the back on, I don't think that they could use that physical force
against me since I was perfectly controlled by them already.
(Doc. 41, Exhibit A, N.T. 25)

. . . . . .

Q. Now, when the elevator doors open, where are you placed in the
elevator?

A. Well, when the doors to the elevator opened, my whole body was down
looking at the floor. So when the guards put me in there with pressure,
my head crashed against the metal from the elevator.
I don't know why they had to use that physical, that force, since I
already have the handcuffs and my hands were behind my back.

Q. So what part of the inside of the elevator did your head strike?

A. Well, directly into the elevator there's a metal handrail so that one can
hold on and not tumble around in the elevator, and that's where my
head hit.

Q. Does the lieutenant and the C.O., are they still holding you at that time?

A. Yeah. Both grabbed me on either side. They both have me on either
side, and my head crashes into the, boom. That's when they
straightened me up and took me down to the hole.

(Doc. 41, Exhibit A, N.T. 31-32).[8]

Plaintiff acknowledges that after he arrived on the first floor and was placed in
his cell, he was presented with a copy of a Misconduct. The Misconduct stated,
along with other charges, that plaintiff became combative when he was placed in
handcuffs. Plaintiff was found guilty of the Misconduct (Doc. 41, Exhibit I). An
Incident Report also indicates that Plaintiff became aggressive and was restrained
with the least amount of force possible by Defendants and that Plaintiff did not
comply with orders after being restrained (Doc. 41, Exhibit I).

We agree with the Magistrate Judge's conclusion that the plaintiff has failed to
set forth an Eighth Amendment excessive force claim. The evidence presented and

---

[8]See also Doc. 41, Exhibit A, N.T. 54.

relied upon by plaintiff, viewed in the light most favorable to him, establishes that during a transfer of plaintiff to the first floor as a disciplinary measure, defendants forcefully pushed plaintiff into the elevator. As a result of being pushed, plaintiff banged his head on a railing at the back of the elevator. Plaintiff testified in his deposition that he had a bump on his head and a headache. He testified that he was seen by medical personnel who gave him one pill a day for four days.[9]/[10]

In reviewing the evidence in the light most favorable to Plaintiff, we do not find that the Plaintiff has established his claim that Defendants used excessive force in transporting him to the first floor. Courts have held that the Constitution does not protect an inmate against an objectively *de minimis* use of force, provided that the use of force is not "repugnant to the conscience of mankind." Whitley v. Albers, 475 U.S. 312, 327 (1986)(quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973), overruled on other grounds by Graham v. Connor, 490 U.S. 386 (1989).

Plaintiff's evidence shows that Defendants pushed him into an elevator, which caused him to bang his head on the back rail. We do not find that this use of force against plaintiff, who may or may not have been combative and aggressive at the time, is so egregious as to be "repugnant to the conscience of mankind." We agree with the Magistrate Judge that the evidence of record does not establish that Defendants Wilk and Domangauer used excessive force on Plaintiff on October 26, 2011 in violation of the Eighth Amendment. Accordingly, we will adopt the Report and Recommendation of the Magistrate Judge dated May 16, 2013 (Doc. 53). An appropriate Order follows.

---

[9] Doc. 41, Exhibit A, N.T. 36-45.

[10] We note that the affidavits of medical personnel at LCCF dispute plaintiff's assertions that he was seen by medical personnel (Doc. 41, Exhibits K-N).